## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROWANA RIGGS,

          *Plaintiff*,

  vs.

CITY OF WICHITA, KANSAS;
CHIEF NORMAN WILLIAMS, in his
official and individual capacity; and
CHRISTIAN CORY, in his official and
individual capacity,

          *Defendants.*

Case No.09-1105-EFM

### MEMORANDUM AND ORDER

This case arises out of Plaintiff Rowana Riggs' arrest that occurred on April 9, 2007, in

Wichita, Kansas.  Plaintiff, proceeding pro se, brings this action against Defendants, the City of

Wichita ("the City"), Chief of Police Norman Williams ("Williams"), and Wichita police officer

Christian Cory, under 42 U.S.C. §§ 1983 and 1985, and various Kansas laws.  Plaintiff seeks

compensatory and punitive damages for Defendants' alleged violations of her constitutional and

state rights.  This matter is now before the Court on the following motions: Plaintiff's motion for

protective order (Doc. 39), and Defendants Williams and the City's 12(b)(5) and (6) motion to

dismiss (Doc. 50).  For the reasons stated below, the Court denies Plaintiff's motion and grants

Defendants' motion.[1]

---

[1]Reference by the Court to "Defendants" hereinafter excludes Defendant Cory because he did not join in the motion to dismiss.

**BACKGROUND**

Plaintiff alleges that on April 9, 2007, Defendant Cory, a police officer with the Wichita Police Department ("WPD"), savagely beat her without provocation.  According to Plaintiff, Defendant Cory approached her after she parked her car in her father's driveway, demanded that she exit her vehicle, then threw her to the ground and pummeled her with punches, kicks, and a stun gun. Plaintiff claims that this attack caused multiple injuries to her pelvic area, neck, shoulders and head, and caused her to urinate on herself.  Following the beating, Defendant Cory drove Plaintiff to the county jail and booked her on the following offenses – resisting arrest, evading and eluding, no proof of insurance, running a stop sign, defective brakelights, and defective backup lights.  While in jail, Plaintiff's request for medical treatment and clean clothes was allegedly denied.

Plaintiff claims that she filed a complaint against Defendant Cory with the WPD Professional Standard's Unit, which is the same office where she had filed claims against two other WPD officers on March 12, 2007.  Plaintiff claims that the officer who took her complaint told her to watch her back.  Plaintiff further claims that she filed a criminal complaint against Defendant Cory.  Sometime after filing her complaints, Plaintiff was interviewed at length.  Additionally, two of the witnesses of the alleged attack were interviewed.  However, no criminal charges were filed, and Chief Norman Williams took no disciplinary action against Defendant Cory.

Based on the events that occurred on April 9, Plaintiff was prosecuted by the City of Wichita in municipal court, and found guilty of resisting arrest, evading and eluding, defective backup lights, and running a stop sign.  Plaintiff alleges that she appealed her conviction to the Sedgwick County District Court ("SCDC").  According to Plaintiff, a SCDC judge fined the City $150 for withholding

-2-

evidence from Plaintiff's attorney.  While Plaintiff's appeal was pending, the City offered to drop all the charges against Plaintiff if she pled guilty to resisting arrest, which she did.

Since her altercation with Defendant Cory, Plaintiff asserts that WPD officers have been harassing, intimidating, and retaliating against her.  For example, Plaintiff's daughter, Brucelle Guillory, who was tased by Defendant Cory during the April 9 incident, has since been stopped four times and fined a total of $2,879.  According to Plaintiff, two of the tickets show no probable cause to stop, and the other two involved only minor traffic offenses.  Additionally, Plaintiff claims that her home was broken into, and the culprit only took her medical records and court documents arising out of the April 9 altercation.  Lastly, Plaintiff claims that WPD officers have been driving by her house in a menacing manner, parking their cars down the street from her home, and pulling up behind Plaintiff when she leaves her home.

On April 9, 2009, Plaintiff filed this action against officer Cory in his individual and official capacity, Chief Williams in his individual and official capacity, and the City, asserting a  litany of claims under federal law, namely 42 U.S.C. §§ 1983 and 1985, and state law.  On the same date that she filed her complaint, Plaintiff, pursuant to K.S.A. 12-105b, also provided the City with notice of her claims.  On October 13, 2009, Defendant Cory was personally served by a process server. Defendant Cory filed a motion to dismiss, which, in a December 21, 2010 Order (Doc. 32), the Court granted in part.[2]  Following the issuance of the December 21 Order, only the following claims remain against Defendant Cory: excessive force under § 1983 in his official and individual capacity, intentional infliction of emotional distress ("IIED") under Kansas law in his individual capacity; and

---

[2]Defendants Williams and the City did not join in this motion.

gross and wanton negligence under Kansas law in his individual capacity, and, to the extent that it relates to the excessive force claim, his official capacity.[3]

On March 4, 2011, Plaintiff personally served Defendants Williams and the City.

## LEGAL STANDARDS

### Pro Se Standard

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[4] However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant."[5] "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[6]

### Temporary Restraining Order Standard

A temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."[7] To prevail on the motion, a plaintiff must establish: (1) that irreparable injury will result unless the order is issued; (2) the threatened injury outweighs whatever damage the proposed restraining order may cause the defendant; (3) the restraining order, if issued, will not be adverse to the public interest; and (4) a substantial likelihood of success on the merits.[8] Where the movant prevails on the first three factors,

---

[3]In his motion, Defendant Cory did not ask the Court to dismiss any of the claims that remain against him.

[4]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[5]*Id*.

[6]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[7]*Lippoldt v. City of Wichita, Kan*., 2001 WL 849526, at *3 (D. Kan. July 16, 2001) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

[8]*See, e.g., Lundrgin v. Claytor*, 619 F.2d 61, 62 (10th Cir. 1980).

he or she may establish a "likelihood of success" by showing questions going to the merits so serious, substantial, difficult, and doubtful as to make them ripe for litigation and thus for more deliberate investigation.[9]

**Standard for a 12(b)(6) Motion to Dismiss for Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[10]   "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[11]   "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[12]

In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[13]   All well-pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[14]   Allegations that merely state legal conclusions, however, need not be accepted as true.[15]

---

[9]*Id.*

[10]*Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[12]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[13]*Iqbal,* 129 S. Ct. at 1950.

[14]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[15]*See Hall*, 935 F.2d at 1110.

## ANALYSIS

As mentioned above, there are two motions now before the Court: Plaintiff's motion for protective order and Defendants' motion to dismiss.  The Court will review these motions in turn.

## I.  Plaintiff's Motion for Protective Order

Plaintiff's motion requests a protective order from the Court to prevent WPD officers and other City of Wichita employees from harassing, intimidating, or retaliating against Plaintiff, her family, and witnesses of the alleged beating.  The Court construes Plaintiff's motion as a request for a temporary restraining order.[16]  A court may enter a temporary restraining order if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant."[17]  Here, Plaintiff neither verified her complaint nor submitted an affidavit.  Further, her motion fails to state facts showing imminent and irreparable harm.[18]  Therefore, Plaintiff's motion is denied.

## II.  Defendants' Motion to Dismiss

Defendants make two arguments in their motion: first, that they were not properly served, and, thus, the Court lacks jurisdiction over them, and second, that Plaintiff has failed to allege a plausible claim against them.  Starting with Defendants' first argument, it is well founded.  Service in federal courts is governed by Fed. R. Civ. P. 4.  Pursuant to this rule, a defendant must be served within 120 days of when the complaint is filed,[19] and service must be effected by someone other than

---

[16]*See Mavrovich v. Vanderpool*, 427 F. Supp. 2d 1084, 1087 (D. Kan. 2006) (construing the pro se plaintiff's request for an anti-harassment protective order as a motion for a temporary restraining order).

[17]Fed. R. Civ. P. 65(b).

[18]*See, e.g., Mavrovich,* 427 F. Supp. 2d at 1087.

[19]*See* Fed. R. Civ. P. 4(m).

the plaintiff.[20]  Here, Plaintiff served defendants herself and did so over 120 days after she filed her complaint.  Plaintiff has provided no justification for her failure to comply with Rule 4.  As a result, Defendants' first argument serves as an adequate basis to dismiss Plaintiff's action.[21]

Even if Plaintiff had properly served Defendants, though, Defendants' motion could be granted on the basis of their second argument, as Plaintiff has failed to state a claim against them. Below, the Court will address each category of Plaintiff's claim for its ability to withstand Defendants' 12(b)(6) motion to dismiss.

**A. *Plaintiff's State Law Claims Against the City and Williams in His Official Capacity*[22]**

In its December 21 Order, the Court dismissed the state law claims asserted against Defendant Cory in his official capacity on the ground that such claims were actually claims against the City and that Plaintiff failed to substantially comply with K.S.A. § 12-105b(d),[23] which states that a Plaintiff must provide a municipality written notice of any claim that might give rise to an action under the Kansas Tort Claims Act prior to filing suit against the municipality.  Therefore, in light of this earlier holding and the existing case law,[24] it necessarily follows that the state law claims against the City and Williams in his official capacity should suffer the same fate.  Thus, Plaintiff's

---

[20]*See* Fed. R. Civ. P. 4(c)(2).

[21]*See, e.g., Constien v. United States*, 628 F.3d 1207, 1216-17 (10th Cir. 2010) (concluding that the district court did not abuse its discretion by dismissing without prejudice the plaintiff's complaint after she unjustifiably failed to properly serve the defendants).

[22]The Court is aware that Williams did not assert this argument in his motion.  However, " '[a] sua sponte dismissal under Rule 12(b)(6) is not reversible error when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.' " *Mavrovich*, 427 F. Supp. 2d at 1089 (quoting *McKinney v. State of Okla. Dep't of Human Servs.*, 925 F. 2d 363, 365 (10th Cir. 1991)).

[23]*See* Doc. 32, p. 5-6.

[24]*See, e.g., Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (stating that suits against government officials in their official capacity "[are] essentially another way of pleading an action against the county or municipality they represent").

state law claims of assault, battery, false arrest, IIED, gross and wanton negligence, and malicious prosecution against the City and Williams in his official capacity should be dismissed.[25]

### B. *Plaintiff's State Law Claims Against Williams in His Individual Capacity*

(1) *Assault, Battery, False Arrest, and Malicious Prosecution*

Defendant Williams argues that Plaintiff's state law claims of assault, battery, false arrest, and malicious prosecution are barred by the statute of limitations.  Federal courts turn to state law to determine the appropriate limitations period for actions arising under state law.[26]  Kansas law requires that any action for assault, battery, malicious prosecution, or false arrest be brought within one year from the date the incident occurred.[27]  Plaintiff's complaint alleges that her state law claims of assault, battery, and false arrest arose on April 9, 2007, and her malicious prosecution claim arose on May 14, 2007.  Plaintiff did not file her action until April 9, 2009.  Therefore, Plaintiff's state law claims of assault, battery, false arrest, and malicious prosecution against Defendant Williams should be dismissed as they are barred by the applicable one-year statute of limitation.

(2) *Gross and Wanton Negligence and IIED*

Williams argues that Plaintiff's remaining state law claims should be dismissed because they are not legally viable.  Turning first to Plaintiff's negligence claim, Plaintiff alleges that Williams' failure to adequately supervise, train, and discipline WPD officers amounts to willful, reckless, and wanton conduct.  Williams argues that this claim should be dismissed because Plaintiff's allegations

---

[25]*See, e.g., Phillips v. Humble*, 587 F.3d 1267, 1272-74 (10th Cir. 2009) (stating that dismissal was appropriate where the plaintiff failed to comply with K.S.A. § 12-105b).

[26]*See Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1301-02 (D. Kan. 2005); *see also Pfuetze v. Kansas*, 2010 WL 3892243, at *8 (D. Kan. Sept. 29, 2010) (stating that the one-year statute of limitation under Kan. Stat. Ann. § 60-514 applied to the plaintiff's state law claims).

[27]*See* K.S.A. § 60-514(b).  "False arrest" and "false imprisonment" are synonymous terms under Kansas law. *See Brown v. State*, 261 Kan. 6, 9, 927 P.2d 938, 940 (1996).

are insufficient to establish gross or wanton conduct. Although Kansas law no longer recognizes degrees of negligence, "gross negligence" is viewed as synonymous with "wanton conduct."[28] Under Kansas law, "a wanton act is something more than ordinary negligence but less than willful injury."[29] "To constitute wantonness the act must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act."[30]

Reviewing Plaintiff's complaint liberally, and despite the general rule that negligence claims should not be decided as a matter of law,[31] the Court concludes that Plaintiff has failed to state a negligence claim against Williams. Nothing in Plaintiff's complaint plausibly suggests that Williams knew or should have known that any of his officers were prone to unjustifiably attacking people, or that jailers denied requests for necessary medical care or clean clothes when one's clothes were soiled. Accordingly, there is no basis on which Williams could be found to have been negligent, much less grossly negligent, for failing to prevent the events that transpired on April 9, 2007, and, thus, Plaintiff's negligence claim against Williams should be dismissed.

Plaintiff's IIED claim should also be dismissed. Williams contends that the alleged conduct – inadequately supervising, training, and disciplining officers – fails to reach the level of severity required to establish Plaintiff's claim. Under Kansas law, a claim for IIED, or outrage, requires the Court to first determine if two threshold requirements are met before finding liability: (1) whether

___

[28]*F.D.I.C., v. Ritchie*, 1996 WL 590912, at *4 (D. Kan. Sept. 27, 1996) (citing *Burdick v. Sw. Bell Tel. Co.*, 9 Kan. App. 2d 182, 186, 675 P.2d 922, 926 (1984)).

[29]*Boaldin v. Univ. of Kan.*, 242 Kan. 288, 293, 747 P.2d 811, 814 (1987) (citing *Lee v. City of Fort Scott*, 238 Kan. 421, 424, 710 P.2d 689, 692 (1985)).

[30]*Id.*

[31]*See, e.g., Ritchie*, 1996 WL 590912, at *4.

the alleged conduct could reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the plaintiff's emotional distress was so extreme that the law must intervene because no reasonable person would be expected to endure distress to such severity.[32]

In this case, Plaintiff's IIED claim fails for essentially the same reason that her negligent claim does.  As noted above, there are no factual allegations that Williams was aware of the fact that officers under his watch were unjustifiably beating people and treating prisoners inhumanely.  Without such allegations there simply is no basis on which to infer that Williams acted unreasonably, in failing to prevent the acts that allegedly occurred on April 9, 2007.  Accordingly, Plaintiff's IIED claim against Williams should be dismissed.

### C.  *Plaintiff's 42 U.S.C. § 1983 Claims Against Williams*

Although unclear, Plaintiff's complaint seems to allege vicarious and individual liability against Williams.  The Court makes short thrift of Plaintiff's apparent § 1983 vicarious liability claim.  Simply put, "[u]nder § 1983, government officials are not vicariously liable for the misconduct of their subordinates."[33]  Therefore, Plaintiff's § 1983 vicarious liability claim against Williams should be dismissed.

With regard to the § 1983 claim asserted against Williams in his individual capacity, it too fails.  Plaintiff alleges that Williams' failure to adequately train, supervise, and discipline WPD officers caused Plaintiff's constitutional rights to be violated.  Williams argues that Plaintiff fails to assert a cause of action because there are no allegations that Williams personally participated in Plaintiff's arrest, or that any action or inaction by Williams caused Plaintiff's rights to be violated.

---

[32]*See Roberts v. Saylor*, 230 Kan. 289, 292-93, 637 P.2d 1175, 1179 (1981).

[33]*Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

To state a claim for supervisory liability under § 1983, a plaintiff must establish the following elements: (1) that the defendant promulgated, created, implemented, or possessed responsibility for the continued operation of a policy; (2) that the policy caused the alleged constitutional violation; and (3) that the defendant acted with the state of mind required to establish the alleged constitutional deprivation.[34] Here, Plaintiff's allegations are patently insufficient to raise a plausible inference that Williams personally contributed to the alleged abuse perpetrated by Wichita law enforcement officials. Outside of Plaintiff's wholly conclusory assertions, there is nothing in the complaint that reasonably suggests that Williams played any role in bringing about Plaintiff's injuries. As a result, Plaintiff's supervisory liability claim against Williams should be dismissed.

### D.  *Plaintiff's 42 U.S.C. § 1983 Claims Against the City*

Like Plaintiff's § 1983 claims against Williams, Plaintiff's § 1983 claims against the City seem to be based on both vicarious and individual liability theories. Beginning with Plaintiff's vicarious liability theory, it fails for the same reason that such a theory failed against Williams: § 1983 does not allow for recovery against a government official or governmental entity on a vicarious liability theory.[35] Thus, to the extent that Plaintiff's § 1983 claim is based on such a theory, it is dismissed.

As for Plaintiff's attempt to hold the City liable based on an individual liability theory, it too is deficient. A municipality may be found liable " 'only when the execution of the government's

---

[34]*See Dodds v. Richardson*, 614 F.3d 1185, 1200 (10th Cir. 2010) (citing *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)).

[35]*See, e.g., Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) ("A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff.").

policy or custom inflicts the [plaintiff's] injury.' "[36]  A policy or custom may take the following forms: (1) a formal regulation or policy statement; (2) an informal custom that, although not a written or express municipal policy, is so widespread and permanent that it constitutes a custom with the force of law; (3) the decisions of employees that possess final policymaking authority; (4) the ratification of the decisions of subordinates, which are subject to review and approval of the final policymakers, by such policymakers; or (5) the deliberate indifference to potential injuries that result from a failure to adequately train or supervise employees.[37]  Here, Plaintiff apparently believes that the City can be held liable because it had a formal policy of violating the Constitution, an informal custom of unconstitutional behavior, a practice of inadequately training its officers, and it ratified the acts that occurred on April 9, 2007, by not punishing those involved.  For the reasons that follow, the Court finds that Plaintiff has failed to allege a plausible claim of municipal liability.

First, outside of Plaintiff's conclusory allegation that a formal policy existed, there is no factual allegation that reasonably suggests that the City actually had a policy of violating its residents' constitutional rights, or that such policy was the motivating force behind the alleged injury.[38]  Second, because Plaintiff has not alleged prior incidents involving similar conduct, it is not plausible to conclude that the City has a custom of engaging in unconstitutional behavior, or that it had actual or constructive notice that its failure to act was substantially certain to result in a constitutional violation, which is a necessary requirement for succeeding in a failure-to-train

---

[36]*Lewis v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 2011 WL 2194013, at *2 (10th Cir. June 11, 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

[37]*See Bryson*, 627 F.3d at 788.

[38]*See, e.g., Lewis*, 2011 WL 2194013 at *2.

theory.[39]   Third, based on Plaintiff's factual allegations, it is not plausible to infer that the City ratified the acts taken by WPD officers on April 9, 2007,[40] or that the City's failure to investigate Plaintiff's complaint to the degree Plaintiff would like, or to punish the officers who interacted with Plaintiff on that date, caused Plaintiff's injuries.[41]   Accordingly, Plaintiff's § 1983 claim against the City should be dismissed.

### E.  *Plaintiff's 42 U.S.C. § 1985 Claim Against Defendants*

Plaintiff alleges that Williams and the City, along with Defendant Cory, conspired together to deprive her of her constitutional rights in violation of 42 U.S.C. § 1985.  Section 1985(3) establishes a cause of action for conspiracy to deprive a person of his or her civil rights.  "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."[42]   "[Section] 1985(3) does not 'apply to all tortious,

---

[39]*See, e.g., id.*

[40]*See Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) (finding that merely alleging that the city failed to take the plaintiff's complaint about police abuse or to punish the offending officer is insufficient to state a claim of municipality liability based on ratification); *Kies v. City of Lima, Ohio*, 612 F. Supp. 2d 888, 901 (N.D. Ohio 2009) (same); *Ramos v. City of Chi.*, 707 F. Supp. 345, 347 (N.D. Ill. 1989) (same).

[41]*See Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005) ("[R]atification must be the moving force, or cause, of the alleged violation."); *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) ("[I]t is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation.") (emphasis in original) (citing *Thomas v. Roberts*, 261 F.3d 1160, 1174-75 (11th Cir. 2001), *vacated by* 536 U.S 953 (2002), *reinstated by* 323 F.3d 950 (11th Cir. 2003); *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990)); *Landrigan v. City of Warwick*, 628 F.2d 736, 747 n.7 (1st Cir. 1980) (stating that holding a municipality liable on a retaliation theory for failing to investigate a claim of police misconduct "would ignore the fundamental requirement that there be a causal connection between the action or inaction on the part of the municipality and constitutional wrongs visited on the plaintiff").

[42]*D'Addabbo v. United States*, 316 F. App'x 722, 727 (10th Cir. 2008) (quoting *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)).

conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.' "[43]

Here, Plaintiff's § 1985 claim fails for multiple reasons. First, Plaintiff has not alleged that she was the victim of race or some other class-based invidiously discriminatory animus.[44] Second, based on the facts alleged, it simply is not plausible that Defendants conspired together to deprive Plaintiff of her constitutional rights. Accordingly, Defendants' motion to dismiss should be granted with respect to this claim.

## CONCLUSION

In sum, Plaintiff's motion for protective order is denied. As for Plaintiff's claims asserted against Williams and the City, the Court finds that Defendants were not properly served and that none of the claims are plausible. Accordingly, the Court grants Defendants' motion to dismiss. In light of the Court's conclusion, only the following claims remain alive in this case: excessive force pursuant to 42 U.S.C. § 1983 and the Fourth Amendment against Defendant Cory in his individual capacity; IIED under state law against Defendant Cory in his individual capacity; and gross and wanton misconduct under state law against Defendant Cory in his individual capacity, and in his official capacity, but only to the extent that such claim relates to Plaintiff's excessive use of force claim.[45]

---

[43]*Id.* (quoting *Tilton*, 6 F.3d at 686); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (stating that a plaintiff alleging § 1985(3) claim "must show, inter alia, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action").

[44]*See, e.g., Kirby v. Dall. Cnty. Adult Prob. Dep't*, 359 F. App'x 27, 35 (10th Cir. 2009) (stating that there must be a discriminatory animus allegation in order for a § 1985 claim to be viable).

[45]It appears that the Court may have incorrectly stated in its December 21 Order that Plaintiff's gross and wanton claim against Defendant Cory in his official capacity survived Defendant Cory's motion to dismiss. However, because Defendant Cory has not asked the Court to review its earlier pronouncement, and out of an abundance of caution, the Court will not resolve the matter in this Order.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for protective order (Doc. 39) is hereby DENIED.

**IT IS FURTHER ORDERED** that Defendants' 12(b)(5) & (6) motion to dismiss (Doc. 50) is hereby GRANTED.

**IT IS SO ORDERED**.

Dated this 20th day of July, 2011, in Wichita, Kansas.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE